UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-242-DLB

WILMA J. MORGAN                                                                                          PLAINTIFF

vs.                                    **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                                        DEFENDANT

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Wilma J. Morgan protectively filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) payments on July 29, 2003. Her applications were denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on December 6, 2004 in Hazard, Kentucky. On April 14, 2005, ALJ Reynolds issued an unfavorable decision, finding that Plaintiff was not disabled and was ineligible for benefits. The Appeals Council denied Plaintiff's request for further review by letter dated June 17, 2005. The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claim.

1

Plaintiff, who was 48 years old at the time of the hearing, completed an eighth grade education and alleges an inability to work beginning on June 6, 2003, due to pain in her neck and back, arthritis, depression, and pain in her legs and right knee. At the hearing before the ALJ, Plaintiff testified that she injured her back in a work-related accident in April 2003, and eventually underwent surgery on her neck.

Having exhausted her administrative remedies, Plaintiff filed the instant suit on August 4, 2005. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 18). At Steps 2 and 3, the ALJ found that Plaintiff has the following severe impairments: chronic neck pain secondary to degenerative disc disease (DDD), status post C5-6 anterior cervical discectomy and fusion, DDD of the lumbar spine, osteoarthritis of the hands and shoulders, bilateral knee pain, borderline intellectual functioning, depressive disorder not otherwise specified (NOS), and anxiety disorder NOS. (Tr. 18-19). The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a reduced range of light work. (Tr. 21). Specifically, the ALJ found that Plaintiff can occasionally bend or stoop, and can occasionally climb stairs and ramps, but cannot climb ropes, ladders, or scaffolds. (Tr. 21). She requires a sit/stand option at 30-40 minute intervals, and cannot work with her hands overhead. (Tr. 21). The ALJ also found that Plaintiff requires entry-level work with 1-2-3 step procedures, no frequent changes in routine, no requirement for problem-solving or independent planning, including goal setting,

occasional interaction with the general public, and no frequent movement of the head. (Tr. 21).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a school cook/baker or custodian. At Step 5, however, the ALJ found that there are a significant number of jobs she can still perform, such as factory work at the light or sedentary level and surveillance monitor. This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.     Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ erred in rejecting the opinion of her treating physician, Dr. John Gilbert.[1] In particular, she argues that: 1) the ALJ harbored personal bias against Dr. Gilbert, and 2) the ALJ conducted his own, independent research in an attempt to discredit him. In response, the Commissioner argues that Dr. Gilbert's opinion that Plaintiff is disabled and cannot return to work is not supported by the objective medical evidence of record.

In April 2003, Plaintiff injured her back, neck, and right knee when she slipped and fell while performing custodial duties at the school where she worked. She initially consulted her family physician, Dr. Kitty Gish. Plaintiff underwent an MRI of her cervical spine on June 11, 2003, which revealed severe DDD with a bulging disc at C5-C6, and large bone spurs, but no disc herniation. (Tr. 124). Dr. Gish recommended physical

---

[1] She also argues that this alleged error tainted the ALJ's credibility determination, but offers no further argument in that regard. (Doc. #4, p.3). Nevertheless, the Court notes that there is substantial evidence in the record for the ALJ's conclusion that Plaintiff's subjective complaints were not credible. (Exh. 14F).

4

therapy.  When that proved unsuccessful, Gish referred Plaintiff to neurosurgeon, Dr. John Gilbert.

Plaintiff first saw Dr. Gilbert on July 22, 2003.  (Tr. 224).  Initially, his treatment consisted primarily of medication (Lortab), but he eventually recommended surgical intervention.  After much consideration, Plaintiff underwent an anterior discectomy and fusion at C5-6 on September 12, 2003.  (Tr. 148-61).  According to Plaintiff, she was "somewhat pleased" with the results of the surgery.  (Tr. 218).  Post-operatively, she followed up with Dr. Gilbert approximately every three months, but continued to complain of neck, back, leg, and arm pain.  (Tr. 216, 227, 233).[2]  On June 4, 2004, Dr. Gilbert ordered Plaintiff to remain off work until her next office visit and re-evaluation.  (Tr. 217).  He reiterated the same during her next visit on July 27, 2004.  (Tr. 227).  Dr. Gilbert's subsequent treatment notes reveal little, if any change, in Plaintiff's condition.

Plaintiff underwent two consultative physical examinations.  The first was performed by Dr. James Templin on March 29, 2004.  Upon examination, Dr. Templin's impression was as follows: chronic cervical pain syndrome; cervical disc herniation; s/p anterior cervical discectomy and fusion; chronic low back pain; history of lumbago, lumbar strain/sprain, and lumbar nerve root injury; lumbar scoliosis; history of cervicalgia; and cervical radiculopathy.  (Tr. 208).  Dr. Templin gave Plaintiff a 28% permanent partial impairment rating based upon her cervical disorder, and opined that she is unable to engage in activities requiring any extensive or repetitive use of the left arm for pushing,

---

[2]The last treatment note from Dr. Gilbert, which was submitted to the Appeals Council, is dated April 28, 2005 and states that "the patient is to remain off work indefinitely.  She cannot lift over 10 lbs.  She can't sit, stoop, or stand for long periods."  (Tr. 253).

5

pulling, lifting, twisting, grasping, holding, carrying, or activities above shoulder level. (Tr. 208-09). He also opined that she should avoid activities requiring frequent twisting and turning of the head from side to side, or prolonged positioning of the head in any one direction. (Tr. 209).

Plaintiff underwent an independent medical examination (IME) by Dr. Gregory Nazar on August 3, 2004. (Tr. 228). Upon examination, Dr. Nazar noted a relatively normal range of neck movement with lateral rotation, lateral flexion, and flexion; slight limitation of extension; and no pain with associated neck movements. (Tr. 230). He also noted that there were no signs of radiculopathy or myelopathy present with neck testing or movement, but that Plaintiff did have subjective restrictions of flexion/extension movements of her low back. (Tr. 230). Straight leg raise was negative bilaterally, but did produce some hip pain on the left, and no radicular signs were noted. (Tr. 230). Based upon these findings, Dr. Nazar's impression was: chronic cervical pain status post anterior cervical discectomy at C5-6 with radiation to the left arm (non radicular), and chronic left buttock pain (non radicular). (Tr. 231). Accordingly, Dr. Nazar opined that:

> it would be appropriate for [Plaintiff] to be able to return back to work. I would recommend work restrictions. She should not be involved with repetitive bending, lifting, stooping and twisting situations. She should be able to change position[s] from sitting, standing and walking frequently. Lifting should be limited to carrying above the waist[,] which can be up to 30 lbs. She should avoid pushing and pulling overhead on a repetitive basis. I feel that it is appropriate for [Plaintiff] to return back to work under these circumstances.

(Tr. 231). Dr. Nazar concurred in Dr. Templin's diagnosis of chronic cervical pain, but disagreed with his diagnosis of disc herniation. (Tr. 231). Dr. Nazar characterized Plaintiff's back pain as a lumbar sprain/strain without evidence of nerve root injury, and

6

stated that "[t]he diagnosis of lumbar scoliosis appears to be inaccurate as this is certainly not evident on [Plaintiff's] MRI study."  (Tr. 231).

The ALJ discussed all this evidence in his written decision.  (Tr. 19).  Plaintiff, argues, however, that the ALJ failed to give controlling weight to Dr. Gilbert's opinion that she remain off work indefinitely.  Specifically, she claims that "[a]lthough Dr. Gilbert is a neurosurgeon, and has been treating [her] since a month after her disabling injury ... the ALJ rejected Dr. Gilbert's opinion ....  In reviewing the ALJ['s] decision, it appears that the reason is ... based on something personal."  (Doc. #4, p.4).  In support, she cites to the following language from the ALJ's decision:

> Dr. Gilbert, on July 27, 2004, had diagnosed cervical radiculopathy, cervical nerve root injury, cervical post-laminectomy syndrome, spinal instability, spinal scoliosis, and muscle spasms, adding, '*I have reviewed the nerve root conduction test done by Dr. Gutti 07/08/04 [12F].  She does have some C5 radiculopathy and a herniated disc.*'
>
> Actually, Dr. Gutti says he performed EMG/NCV of the left arm and left leg and found left C5 radiculopathy and a normal left leg examination, and the Administrative Law Judge notes that Dr. Gilbert, as is his custom, sees frank herniation (radiculopathy) where others do not.  The undersigned has consulted <u>Dorland's Medial Dictionary; Webster's Dictionary; The Random House College Dictionary; Webster's II, rev.; and The American Heritage Dictionary</u> in an effort to clear up the difference between herniation and a bulge.  There is none.  They are all 'protrusions' ....  thus Dr. Gilbert may be etymologically (but not medically) correct in calling all bulges herniations or HNP's.

(Tr. 19-20).

An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004) citing 20 C.F.R. §

404.1527(d)(2). If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion. *Id.* The regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Id.* A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96- 2p, 1996 WL 374188, at *5 (1996).

In this case, Plaintiff contends that the ALJ erred in rejecting Dr. Gilbert's opinion that she should remain off work. Contrary to Plaintiff's suggestion, the ALJ was not required to give this opinion controlling weight. *See* 20 C.F.R. § 404.1527(e); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *5 (1996) (noting that medical source opinions about whether an individual "disabled" or "unable to work," are administrative findings that are reserved to the Commissioner and are not entitled to controlling weight or given special significance, even when offered by a treating source). Moreover, substantial evidence supports the ALJ's conclusion that Plaintiff retains the residual functional capacity to perform a reduced range of light work.

8

On final matter deserves comment. In her motion, Plaintiff argues, at length, that the ALJ harbored personal bias against Dr. Gilbert, and as a result, he was predisposed to reject his opinion. In support, she relies on the following facts: 1) the ALJ expressly stated that it is Dr. Gilbert's "custom" to diagnose herniated discs where other physicians would not, 2) the ALJ emphatically noted that one of the consultative examiners expressed doubt about Dr. Gilbert's diagnosis of lumbar scoliosis, and thereby implied that Dr. Gilbert had mis-diagnosed herniation as well, and 3) the ALJ performed his own, independent research in an attempt to discredit Dr. Gilbert.

Upon review of the record, the Court concludes that Plaintiff's allegations are just that, allegations. The medical evidence with respect to Plaintiff's back and neck pain was inconsistent, at best. For example, an MRI by Dr. Gish revealed a "bulging disc" at the C5-C6 level; while Dr. Gilbert diagnosed "herniation," a diagnosis that Dr. Templin, but not Dr. Nazar, agreed with. The excerpt from the ALJ's decision cited above, *see supra* page 7, reflects the ALJ's attempt to resolve these divergent opinions/diagnoses. This is precisely the ALJ's function. *See Ziegler v. Sullivan*, 894 F.2d 1337, at *4 (6th Cir. 1990) (Table decision, text available on Westlaw). Moreover, the only other "medical opinion" offered by Dr. Gilbert, and allegedly improperly rejected by the ALJ, was that Plaintiff should remain off work indefinitely. As discussed more fully above, the ALJ was not required to give such an opinion controlling weight.

For these reasons, the Court concludes that substantial evidence supports the ALJ's decision. Plaintiff's allegation to the contrary is without merit.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #6) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 4th day of April, 2006.

Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-242-MorganMOO.wpd